**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0755n.06

**No. 09-5906**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 13, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| In re: J. COLLINS LANDSTREET, II, <br><br> Petitioner - Appellant | ) ON APPEAL FROM THE UNITED <br> ) STATES DISTRICT COURT FOR THE <br> ) EASTERN DISTRICT OF TENNESSEE <br> ) <br> ) OPINION |

Before: SILER, MCKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** J. Collins Landstreet, II seeks review of a public reprimand issued by the Chief Judge of the Eastern District of Tennessee based on findings that Landstreet engaged in unprofessional and unethical conduct. Finding no abuse of discretion, we **AFFIRM**.

**I. BACKGROUND**

Pursuant to Eastern District of Tennessee Local Rule 83.7, the district court issued a Show Cause Order in late March 2009 directing Landstreet to respond within twenty days why disciplinary action should not be taken against him. Less than two weeks earlier, following an extensive investigation by a bankruptcy judge, the court had issued a final decision suspending Landstreet's colleague, Thomas E. Cowan, Jr., from the practice of law in the Eastern District of Tennessee for a period of six months.

The disciplinary action against Landstreet arose from the same facts that resulted in Cowan's six-month suspension and related to seven Chapter 7 bankruptcy cases filed on behalf of debtors in

1

the United States Bankruptcy Court for the Eastern District of Tennessee. The debtors in the seven cases were Cowan's clients.

Earlier, in late November 2007, while Cowan and his staff were preparing those bankruptcy cases for filing, Cowan reached an agreement with the Tennessee Board of Professional Responsibility to settle an unrelated disciplinary action against him. The settlement provided that Cowan would serve a three-month suspension from the practice of law from December 15, 2007, through March 15, 2008, and the parties submitted a proposed order to that effect to the Tennessee Supreme Court for approval. The Tennessee Supreme Court rejected the proposed settlement in May 2008, but in the time period between December 15, 2007, and March 15, 2008, Cowan believed that his bar license was suspended.

Cowan sent his bankruptcy clients a letter dated December 20, 2007, informing them of his suspension. He told his clients that Landstreet would assume their representation during his suspension, absent any objection. Cowan further stated that Landstreet would require the debtors to complete a "Personal Financial Management Instructional Course" in person, by telephone, or by internet. He enclosed a list of providers for the "Pre-Bankruptcy" course, explained how the course could be taken and paid for, and instructed the clients to forward their certificates of completion to the law office.

After Cowan sent the letter, Landstreet became the attorney of record for the debtors. Six of the bankruptcy petitions were filed on the bankruptcy court's electronic filing system on March 4, 2008, and the seventh was filed on March 5, 2008. Landstreet's log-in name and password for the electronic filing system were used to file the petitions.

Cowan resumed representation of the debtors in mid-March 2008, when he believed his suspension from practice had ended. Cowan attended the meetings of creditors held on April 2, 2008, as well as the examinations of the debtors under oath held on April 22, 2008. Fed. R. Bankr. P. 2004. At the Rule 2004 examinations, the debtors revealed that they had never met Landstreet, their bankruptcy petitions were not filed in a timely manner, they paid more in attorney fees than their petitions disclosed, and they were led to believe that they had a period of days after filing a bankruptcy petition to obtain credit counseling.

Based on the debtors' testimony, the United States Trustee filed a disciplinary complaint against Cowan in the district court, along with a motion seeking disgorgement of all attorney fees paid by the debtors. In a settlement with the United States Trustee, Cowan agreed to disgorge all of the fees, and he subsequently amended the fee disclosure statements on August 4, 2008 to show that no fees were paid. He did not, however, amend the fee disclosure statements earlier when he first learned that the forms did not disclose the correct fee amounts charged.

In the Show Cause Order directed to Landstreet, the district court requested a response to several allegations that Landstreet acted unprofessionally and unethically in his handling of the bankruptcy cases. The allegations concerned the amount of attorney fees charged, the failure to correct the bankruptcy disclosure statements to reflect the actual fees charged, erroneous advice given to clients about obtaining credit counseling, the failure to conduct a reasonable inquiry to determine the debtors' eligibility for bankruptcy relief, and the commission of fraud on the court by filing one of the bankruptcy cases before the debtors actually signed the documents purportedly bearing their signatures. The Show Cause Order directed Landstreet to provide supporting evidence

3

relevant to the charges, state whether or not a hearing was requested, and sign the response under penalty of perjury.

Landstreet filed a response to the Show Cause Order explaining his role in the bankruptcy cases. He denied that he acted in an unprofessional or unethical manner and specifically declined a hearing.

In a Memorandum and Order, the court decided that a public reprimand was appropriate. The court first found that Landstreet violated Federal Rules of Bankruptcy Procedure 2016(b) and 2017 because he failed in his affirmative duty to disclose fully and completely all attorney fee arrangements and payments. In reaching this determination, the court found that neither Cowan nor Landstreet ever corrected the fee disclosure statements to show what was initially charged, though later refunded. Landstreet did not dispute that the disclosure statements were inaccurate. Observing that Landstreet had an obligation to ensure that any filings he submitted were accurate and complete, regardless of whether his staff or another lawyer prepared the filings, the court found by clear and convincing evidence that Landstreet violated Rule 2016 and that his conduct was sanctionable.

Next, the court found by clear and convincing evidence that Landstreet should be sanctioned for violating Rule 9011 and his professional duty to provide competent representation under Tennessee Rule of Professional Conduct 1.1 due to his failure to make a reasonable investigation of the facts and law before filing the bankruptcy petitions. The court determined that the evidence did not support a finding that Landstreet misinformed the debtors about required pre-bankruptcy counseling, but the court nonetheless found that Landstreet failed to make certain that the debtors completed all necessary steps rendering them eligible for bankruptcy relief before filing their petitions. Landstreet's signature confirmed that the petitions were accurate, but in fact they were not.

4

The court ruled that ultimate resolution of the bankruptcy cases in favor of the debtors did not negate Landstreet's violation of Rule 9011.

The court further found by clear and convincing evidence that Landstreet's filing of a bankruptcy petition before it was completed and signed by the debtors violated Rule 9011. Recognizing that Landstreet did not act willfully, the court found that professional standards must be met whether an attorney's conduct is willful, negligent, or incompetent.

Landstreet's failure to accept responsibility for his conduct and his lack of remorse were aggravating factors that the court weighed against him. Mitigating factors were the absence of bad faith, Landstreet's attempt to rectify the filing of the incomplete bankruptcy petition, a lack of any pattern of misconduct, and Landstreet's desire to assist Cowan during his suspension. Because of the fortuitous circumstance that Cowan's suspension did not actually occur during the expected period, Landstreet did not, in fact, act as a "front" for Cowan so that he could continue to practice law while on suspension. Nonetheless, the court found that Landstreet demonstrated negligent and unprofessional conduct. The court first compared the gravity of Landstreet's conduct to that of other attorneys who were suspended from practice in the Eastern District of Tennessee. It then decided that a public reprimand would be a sufficient sanction to impress upon Landstreet the importance of conforming his professional conduct to the standards of the Eastern District and of exercising sound judgment, while protecting the public and deterring Landstreet and other attorneys from engaging in similar conduct.

Landstreet filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or, alternatively, under Federal Rule of Civil Procedure 60(b)(6), and asked the court to change the public reprimand to a private reprimand. He provided his own affidavit and the

5

affidavits of two Tennessee state judges who commented positively on Landstreet's abilities and professionalism. Landstreet also requested a hearing.

The court conducted an in-chambers hearing, but issued a supplemental decision denying relief. The court accepted Landstreet's assertion that his behavior was uncharacteristic and a deviation from his usual standard of care, but the court stood by its finding that the cause of Landstreet's deviation was his association with Cowan. The court believed that the case highlighted the dangers inherent in a suspended attorney's efforts to continue to practice law through the use of another attorney. The court stated that a private reprimand would not deter other attorneys from relying on the practices of suspended attorneys when taking over their cases. The court believed that a public reprimand would notify all attorneys admitted to the bar of the Eastern District of Tennessee that assisting a suspended attorney in the practice of law is sanctionable conduct.

## II. STANDARD OF REVIEW

We review a district court's decision to issue a public reprimand to an attorney for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (reviewing Rule 11 sanctions for abuse of discretion); *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 478 F.3d 255, 266 (5th Cir. 2007) (reviewing public reprimand for abuse of discretion); *In re Lewellen*, 56 F. App'x 663, 665-66 (6th Cir. 2003) (reviewing censure for abuse of discretion). "Review is particularly deferential in sanctions cases." *In re Lewellen*, 56 F. App'x at 665 (citing *Cooter & Gell*, 496 U.S. at 400-05). A district court abuses its discretion if it bases a ruling on clearly erroneous facts or on an erroneous view of the law. *Id.*

## III. ANALYSIS

The district court has inherent duty and responsibility to supervise the conduct of attorneys appearing before the court. *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). Any court possessing power to admit attorneys to practice has authority to sanction them for unprofessional conduct. *Standing Comm. on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984). A disciplinary proceeding is neither criminal nor civil; rather, it is an investigation into the lawyer's conduct to determine whether the lawyer may continue to practice a profession that is "imbued with the public interest and trust." *Id.* The court must consider the attorney's fitness to practice law and the need to protect the public from an attorney who is not qualified or who is unscrupulous.

"In the federal system there is no uniform procedure for disciplinary proceedings. The individual judicial districts are free to define the rules to be followed and the grounds for punishment." *Id.* An attorney subject to a disciplinary investigation is entitled to procedural due process, including notice and an opportunity to be heard. *Id.* (citing *In re Ruffalo*, 390 U.S. 544, 550 (1968)).

The Eastern District of Tennessee has adopted Local Rule 83.7 on attorney discipline. That rule allows the court to "impose discipline on any member of its bar who has violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee, or has engaged in unethical conduct tending to bring the Court or the bar into disrepute." Reprimand is a specific type of discipline that may be imposed on an attorney. *See In the Matter of Searer*, 950 F. Supp. 811, 816 (W.D. Mich. 1996).

The disciplinary proceeding initiated against Landstreet complied fully with the procedures set forth in Local Rule 83.7(b). Landstreet was allowed to respond in writing to the allegations

7

against him. Local Rule 83.7(e). Upon his belated request, the court held a hearing with a court reporter present. Local Rule 83.7(i). The court applied the required standard of proof of clear and convincing evidence. Local Rule 83.7(i)(4).

Landstreet contends that some of the court's factual findings were not supported by clear and convincing evidence. For the first time on appeal, Landstreet denies that Cowan was his law partner. He challenges the court's statement that Cowan was Landstreet's law partner as "incorrect as a point of fact and is completely unsupported by the record, which is absent of any indication that the two attorneys were in any way formally associated in the practice of law." *Id.* at 16. Landstreet claims that his duties under Tennessee Rule of Professional Conduct 1.10, pertaining to imputed disqualification, would have been different if Cowan was his law partner.

Ordinarily we do not consider issues that were not raised in the district court and are presented for the first time on appeal, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752–53 (6th Cir. 2011), but Landstreet's mischaracterization of the record cannot be disregarded. The record compels a conclusion that Landstreet and Cowan were "formally associated in the practice of law." The bankruptcy court investigation revealed that Cowan and Landstreet practiced law in the same office under the name Cowan & Landstreet, P.C., and they utilized the same staff. Cowan's December 2007 letter to the bankruptcy clients appeared on letterhead stationery for "Cowan & Landstreet, P.C.," and he informed his clients in that letter that Landstreet was his "law partner of fifteen (15) years." During the in-chambers hearing, Landstreet discussed with the court his lengthy professional relationship with Cowan. Even if Cowan and Landstreet were not partners in the legal sense, we easily conclude that there were sufficient facts for the district court to determine that Landstreet and Cowan were formally associated in the practice of law.

Landstreet next complains that the court committed clear error in finding that he acted as a "front" for Cowan during his suspension from the bar because the court knew that Cowan was not actually suspended during the relevant time period. Landstreet argues that the court relied on this erroneous finding to make Landstreet an example for other attorneys.

The district court did not find that Landstreet acted as a front for Cowan. The court found just the opposite, noting it was only fortuitous that Cowan's suspension did not go into effect as expected. Nonetheless, the court determined that Landstreet should be reprimanded for his own admittedly negligent conduct that violated the Tennessee Rules of Professional Conduct and the Federal Rules of Bankruptcy Procedure and that the reprimand should be public to warn other attorneys of the dangers inherent in taking over cases for suspended lawyers.

Landstreet contends that the court erroneously criticized him for failing to conduct a reasonable inquiry into each client's case. He argues that the court did not take into account that he relied on sworn statements provided by the clients and on Cowan's assurance that credit counseling had been completed before the bankruptcy petitions were filed.

We are bound by the district court's supportable findings that Landstreet never met Cowan's clients, yet Landstreet allowed the office staff to place his signature on the bankruptcy petitions and use his personal log-in information to file the petitions with the district court, without personally confirming that the representations he was making as an officer of the court under Federal Rule of Bankruptcy Procedure 9011(b) were correct. Landstreet admitted during the hearing that it was his fault for not reviewing the credit counseling certificates, that he should have double-checked the amount of attorney fees printed on the disclosure statements, and that he was negligent in not

9

reviewing the documents. In light of these admissions, there is no merit to Landstreet's contention that the district court erroneously decided the facts.

Landstreet next challenges the court's finding that neither he nor Cowan ever corrected the attorney fee disclosure statements. Cowan did amend the disclosure statements in August 2008 to show that no fees were paid, reflecting the fact that all attorney fees paid by the debtors had been refunded to them. When the fee error was first discovered in April 2008, however, neither attorney amended the disclosure statements to reflect the amount of fees actually paid by the debtors. Even if the court erred on this point, the factual error was not so egregious as to require reversal.

Landstreet also contends that the only aggravating factor the court considered was his failure to accept responsibility; yet, the only support for that aggravating factor was Landstreet's decision to defend himself against the allegations and to explain the full factual background of the events in question. Because the court equated Landstreet's self-defense with failure to take responsibility, Landstreet claims his due process rights were violated. Moreover, he argues that no aggravating factor existed to support the public reprimand after Landstreet presented further evidence that he accepted responsibility for the events.

We can find no evidence that the district court equated Landstreet's decision to defend himself with a lack of acceptance of responsibility. We agree with the court that the tone of Landstreet's initial written submission in response to the Show Cause Order suggested his inability or unwillingness to accept responsibility for his actions. Only after the court imposed discipline did Landstreet ask for a hearing, apologize to the court, and state by affidavit and in person that he accepted responsibility for his conduct. In the order denying the motion to alter or amend, the court stated that Landstreet "accepts full responsibility for the failings in the cases at issue" and the court

10

also accepted his "assertion that his behavior in this case was uncharacteristic" and "a deviation from his usual standard of care." Nonetheless, the court adhered to its position that a public reprimand was necessary. We conclude that Landstreet received all of the process he was due under Local Rule 83.7. *See In re Ruffalo*, 390 U.S. at 550.

Finally, the case of *In re Snyder*, 472 U.S. 634, 647 (1985), does not aid Landstreet. There the Supreme Court was concerned with the Eighth Circuit's discipline of an attorney who submitted a letter to the district court exhibiting an "unlawyerlike rudeness" in criticizing the court's handling and compensation of Criminal Justice Act appointments. *Id.* The Supreme Court determined that the letter did not justify a finding of contempt or unfitness to practice law in the federal courts. *Id.* Here, Landstreet admitted misconduct relating to his fitness to practice before the federal court, which the court found sufficient to support the discipline imposed.

## IV. CONCLUSION

For all of the reasons stated, the Chief Judge of the Eastern District of Tennessee did not abuse his discretion in issuing a public reprimand of Landstreet. Accordingly, we **AFFIRM**.